UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| VALENTIN CALVILLO, | |
| Petitioner, | Case No. 1:21-CV-00293-CWD |
| v. | **MEMORANDUM DECISION AND ORDER** |
| ATTORNEY GENERAL OF IDAHO, | |
| Respondent. | |

Petitioner Valentin Calvillo (Petitioner), an Idaho prisoner residing in an Arizona facility contracted to the Idaho Department of Correction, is proceeding on his Second Amended Petition for Writ of Habeas Corpus. Dkt. 31. The initial Petition and Amended Petition (Dkts. 3, 11) contained some duplicate claims, which the Court combined using a "/" between the numbers. Petitioner's Second Amended Petition included some of the same claims under different numbers; the Court uses "[]" to indicate corresponding new claim numbers.

All claims but one have been resolved. Petitioner withdrew Claim 1 (lack of impartial jury), Claim 8/12(b) (inappropriate grooming), and Claim 11 (failure to object to leading questions) in his Second Amended Petition. Dkt. 31. Claims 2, 3, and 4 in the Amended Petition for Writ of Habeas Corpus were summarily dismissed by the Court.

**MEMORANDUM DECISION AND ORDER - 1**

Dkt. 12. Claim 6/10(a) [now Claim 2(b)] (failure to investigate witnesses) and Claim 9 [now Claim 1] (right to testify) were dismissed in an Order granting Respondent's Motion for Partial Summary Dismissal. Dkt. 30.

Remaining for adjudication on the merits is Claim 6/10(b) [now Claim 2(a)], ineffective assistance of counsel for failure to call witnesses. This claim is now fully briefed and ripe for adjudication. Dkts. 31, 38, 45.

## CONSIDERATION OF MERITS OF REMAINING CLAIM

### 1. Merits Standard of Law

Federal habeas corpus relief may be granted to a petitioner "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where the petitioner challenges a state court judgment in which federal claims were adjudicated on the merits, Title 28 U.S.C.§ 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 (AEDPA), applies. Title 28 U.S.C.§ 2254(d) limits relief to instances where the state court's adjudication of the petitioner's claim:

> 1.    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2.    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

**MEMORANDUM DECISION AND ORDER - 2**

To assess whether habeas corpus relief is warranted, the federal district court reviews "the last state-court adjudication on the merits." *Greene v. Fisher*, 565 U.S. 34, 39 (2011). The deferential standard of section 2254(d) applies even if the state court decision "is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

Where the state's highest court did not issue a reasoned decision but the intermediate appellate court did, the federal court reviews the decision of the lower appellate court, using the "look through" principle of *Ylst v. Nunnemaker*, 501 U.S. 797 (1991), and "presume[s] the higher court agreed with and adopted the reasons given by the lower court." *Curiel v. Miller*, 830 F.3d 864 (9th Cir. 2016).[1]

Where a petitioner contests the state court's legal conclusions, including application of the law to the facts, § 2254(d)(1) governs. Here, the state appellate court identified the correct legal standard. Therefore, the analysis is focused on whether that court "unreasonably applie[d] it to the facts of the particular state prisoner's case." *Williams (Terry) v. Taylor*, 529 U.S. 362, 407 (2000). Importantly, § 2254(d)(1) "does not require state courts to extend that precedent," nor does it "license federal courts to treat the failure to do so as error." *White v. Woodall*, 573 U.S. 415, 426 (2014).

---

[1] The United States Supreme Court clarified: "In *Ylst*, we said that where "the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits. 501 U.S., at 803, 111 S.Ct. 2590," but that the presumption can be refuted by "strong evidence." *Kernan v. Hinojosa*, 578 U.S. 412, 415 (2016).

**MEMORANDUM DECISION AND ORDER - 3**

A federal court cannot grant habeas relief simply because it concludes in its independent judgment that the state court's decision is incorrect or wrong; rather, the state court's application of federal law must be *objectively* unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The Supreme Court emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102.

The "unreasonable application" standard—which is whether "fairminded jurists could disagree" with the state court decision—as interpreted by the United States Supreme Court in its early AEDPA cases, is somewhat difficult to comprehend. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). More recent decisions restate the standard of law in more understandable language, such as, "The prisoner must show that the state court's decision is so obviously wrong that its error lies 'beyond any possibility for fairminded disagreement.'" *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (citing *Richter*, 562 U.S. at 103). This means that, if *any* fairminded jurist could take a different view from the way the state appellate court resolved the claim, habeas corpus relief is not warranted. *Id*. at 121. But if *all* fairminded jurists would agree that resolution of the claim was "an error well understood and comprehended in existing law," then relief is warranted. *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (citation omitted).

The only source of clearly established federal law is holdings of the United States Supreme Court, but the district court may rely on circuit precedent as persuasive

**MEMORANDUM DECISION AND ORDER - 4**

authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999). However, circuit law may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013).

The foregoing standard is AEDPA's § 2254(d)(1) deferential standard. De novo review applies in rare circumstances, for example, where the state appellate court did not decide a properly-asserted federal claim, where the state court's factual findings are unreasonable under § 2254(d)(2), or where an adequate excuse for the procedural default of a claim exists. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002). In such a case, as in the pre-AEDPA era, a district court can draw from both United States Supreme Court and well as circuit precedent, limited only by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989).

Under both AEDPA deferential and de novo review, if the factual findings of the state court are not unreasonable, the federal district court must apply the presumption of correctness found in 28 U.S.C. § 2254(e)(1) to any facts found by the state courts. *Pirtle*, 313 F.3d at 1167. Contrarily, if a state court factual determination is unreasonable, or if there are no state court factual findings and the claim is properly before the court, the district court is not limited by § 2254(e)(1) and may consider evidence outside the state

**MEMORANDUM DECISION AND ORDER - 5**

court record, except to the extent that § 2254(e)(2) might apply. *Murray v. Schriro*, 745 F.3d 984, 1000 (9th Cir. 2014).

If a petitioner succeeds in showing a constitutional violation under either the AEDPA deferential or de novo review standard, then the petitioner is entitled to federal habeas corpus relief only if the petitioner can establish that the error resulted in "actual prejudice." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Under the *Brecht* standard, an error is not harmless, and habeas relief must be granted, if the federal court has "grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (internal quotation marks omitted). However, some types of claims "are analyzed under their own harmless error standards, which can render *Brecht* analysis unnecessary." *Jackson v. Brown*, 513 F.3d 1057, 1070 (9th Cir. 2008). Ineffective assistance of counsel claims are included in this category. *Musladin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009). In either instance, if the constitutional error did not result in actual prejudice to the defense, federal habeas corpus relief must be denied.

The standard for Sixth Amendment ineffective assistance of trial counsel claims was identified in *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner asserting ineffective assistance must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment,"

MEMORANDUM DECISION AND ORDER - 6

and (2) those errors "deprive[d] the defendant of a fair trial, a trial whose result is

reliable." *Id*. at 687.

Whether an attorney's performance was deficient is judged against an objective

standard of reasonableness.  *Id.* at 687-88. A reviewing court's inquiry into the

"reasonableness" of counsel's actions must not rely on hindsight:

> Judicial scrutiny of counsel's performance must be highly
> deferential. It is all too tempting for a defendant to second-
> guess counsel's assistance after conviction or adverse
> sentence, and it is all too easy for a court, examining
> counsel's defense after it has proved unsuccessful, to
> conclude that a particular act or omission of counsel was
> unreasonable. A fair assessment of attorney performance
> requires that every effort be made to eliminate the distorting
> effects of hindsight, to reconstruct the circumstances of
> counsel's challenged conduct, and to evaluate the conduct
> from counsel's perspective at the time. Because of the
> difficulties inherent in making the evaluation, a court must
> indulge a strong presumption that counsel's conduct falls
> within the wide range of reasonable professional assistance;
> that is, the defendant must overcome the presumption that,
> under the circumstances, the challenged action might be
> considered sound trial strategy. There are countless ways to
> provide effective assistance in any given case. Even the best
> criminal defense attorneys would not defend a particular
> client in the same way.

*Id.* at 689 (internal citations and quotation marks omitted).

Under the prejudice prong of *Strickland*, "[a]n error by counsel, even if

professionally unreasonable, does not warrant setting aside the judgment of a criminal

proceeding if the error had no effect on the judgment." *Id*. at 691. Rather, a petitioner

"must show that there is a reasonable probability that, but for counsel's unprofessional

**MEMORANDUM DECISION AND ORDER - 7**

errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland*

Court instructed:

> In making this determination, a court hearing an
> ineffectiveness claim must consider the totality of the
> evidence before the judge or jury…. Taking the unaffected
> findings as a given, and taking due account of the effect of the
> errors on the remaining findings, a court making the prejudice
> inquiry must ask if the defendant has met the burden of
> showing that the decision reached would reasonably likely
> have been different absent the errors.

*Id.* at 695-96. To constitute *Strickland* prejudice, "[t]he likelihood of a different result

must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When evaluating a claim of ineffective assistance of counsel in a federal habeas

proceeding under § 2254(d)(1), the Court's review of how the state appellate court

decided that claim is "doubly deferential." *Cullen v. Pinholster*, 563 U.S. 170, 190

(2011).

## 2. Background

### A. *First Jury Trial and State Appeals*

Petitioner, a citizen of Mexico, was charged with sexual abuse and lewd conduct

with a minor in a criminal action in the Fifth Judicial District Court in Twin Falls County,

Idaho. In 2011, in the final days of Petitioner's first jury trial on the charges, he

absconded from the country. The court nevertheless continued the case, finding that

Petitioner was voluntarily absent from trial. The Court instructed the jury not to consider

Petitioner's absence from trial or failure to testify in deciding the charges. Petitioner's

counsel's trial strategy was destroyed by Petitioner's failure to testify, and counsel decided not to call witnesses or make a closing argument for Petitioner.

The jury convicted Petitioner of one count of sexual abuse of a minor and six counts of lewd conduct with a minor. The victim was C.V., the 10-year-old daughter of Petitioner's live-in girlfriend. The trial court forfeited Petitioner's bond and issued a bench warrant for his arrest. Several months later, Petitioner's bond company brought him back to the United States from Mexico. The trial court then sentenced Petitioner to a unified term of 30 years, with the first 15 years fixed. *See* State's Lodging A-1, pp. 11-436.

On direct appeal, Petitioner alleged prosecutorial misconduct because the prosecutor suggested at closing that the evidence was "uncontroverted" by Petitioner. The Idaho Court of Appeals affirmed the judgment of conviction (State's Lodging B-10), and the Idaho Supreme Court denied the petition for review. *See* State's Lodgings B-1 through B-13.

Petitioner next filed a petition for post-conviction relief, alleging that his trial counsel was ineffective for failing to present witnesses or make a closing argument. The State stipulated that defense counsel had been ineffective. The district court granted the petition, vacated the jury verdict and judgment of conviction, and ordered a new trial. *See* State's Lodgings C-1 through D-5.

> **B.** *Second Jury Trial through First Post-Conviction Appeal*

After a new trial in 2016, when the victim was 16 years old, the jury acquitted Petitioner of one count of lewd conduct, but found him guilty of one count of sexual abuse of a minor and five counts of lewd conduct with a minor. He was sentenced to a 15-year fixed sentence on the child sexual abuse count, and to five 30-year sentences, with 15 years fixed, on the lewd conduct counts, all to run concurrently. *See* State's Lodgings C-1 to C-5.

Petitioner filed a direct appeal, which was unsuccessful. *See* State's Lodgings D-2 to D-9. Petitioner filed a Rule 35 motion, which was denied, and he again was unsuccessful on appeal. *See* State's Lodgings E-4 to E-7.

Petitioner filed a first post-conviction relief petition, containing the at-issue claim; the state district court summarily denied the petition. *See* State's Lodging F-1 at 142-156, 153 ("In the instant case, Petitioner has not provided any of the necessary facts. Petitioner does not state who the witnesses were that should have been called at trial, what the witnesses would have said at trial, nor how such testimony would have provided an advantage to Petitioner. There are no facts in the record demonstrating that the missing testimony would have changed the jury's verdict.").

Petitioner attempted to supplement the record to support the at-issue claim by including facts about four of the witnesses in his appellate briefing. State's Lodging G-9 at 29-33. In the first post-conviction appeal, the Idaho Court of Appeals ignored the late and improper effort to do so:

**MEMORANDUM DECISION AND ORDER - 10**

> Calvillo makes factual assertions in his appellate briefing to this Court but failed to present these same facts to the district court. Because Calvillo makes these assertions for the first time on appeal, we will not consider them when reviewing his claims. *See* I.C. § 19-4906 (courts look to pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, to determine whether summary dismissal was appropriate).

*See* State' Lodging G-14 at 5 n.3. The Court of Appeals rejected the claim on the merits based on only what Petitioner had presented to the state district court:

> Here, Calvillo provided no support for his allegation that trial counsel filed to call witnesses that were important to his defense. For example, Calvillo did not provide an affidavit or other evidence from a single individual identifying the substance of what he or she would have testified to if Calvillo's trial counsel would have called him or her as a witness during trial. Without admissible evidence identifying which individuals should have been witnesses or what the individuals would have said, Calvillo's claim is bare and conclusory, and it fails to demonstrate that trial counsel's failure to call certain witnesses was prejudicial.

*Id*. at 11; *see* State's Lodgings F-1 at 6-13, 124; G-14 at 11.

## C. *Second Jury Trial through First Post-Conviction Appeal*

To attempt to remedy this error in Petitioner's claim presentation, he filed a successive post-conviction petition identifying Luis Soria, Herminia Castro, Ruben Vera, and Ruben Vera, Jr., and describing their testimony. State's Lodging H-1 at 16-18. The successive petition was supported by Petitioner's own affidavit, but not any others. *Id*. at 42-43.

**MEMORANDUM DECISION AND ORDER - 11**

The state district court determined:

> These claims are not properly brought before this court. First, the general claim of ineffective assistance of counsel was already raised in the prior petition. To the extent Petitioner asserts that any new claims are set forth in the Successive Petition, he has failed to sufficiently explain why those Claims were not raised in the original Petition. Finally, the first petition is still pending a final decision on appeal.

*Id*. at 61.

Petitioner appealed. Presumably because he expanded the claim with new facts in his successive petition, the Idaho Court of Appeals treated the failure to call witnesses claim as new (not subject to res judicata grounds), but held that the claim was barred because he "was aware of the factual bases of these claims during his underlying criminal proceeding." State's Lodging I-14 at 7.

### 3. Discussion

The remaining claim in the pending federal habeas corpus (designated 2(a) in the Second Amended Petition) is that trial counsel was ineffective for failing to call 11 witnesses who would have aided his defense. Dkt. 31 at 10-11. He now provides a purported substance of testimony for most of these, enlarging and elaborating on his failure to call witnesses claim in this federal proceeding. As noted above, this claim (with no number of witnesses specified) was rejected on the merits by the state courts; it again (with four witnesses specified) was rejected on procedural grounds by the state courts.

The Court will construe this claim in four different ways. First, Respondent argues that the Idaho appellate decision rejecting the *Strickland* claim on the merits of the first post-conviction appeal was a reasonable application of *Strickland* under Section 2254(d)(2). Second, Respondent argues that Petitioner's attempt to raise new facts in his appellate brief in the first post-conviction appeal was clearly contrary to Idaho law; therefore, the Idaho Court of Appeals properly rejected the new evidence and decided the merits only on what Petitioner had properly presented to the state district court.

Third, Respondent argues that, because the Idaho appellate court rejected Petitioner's successive post-conviction attempt to bring (and expand) the *Strickland* witnesses claim by relying on an adequate and independent state bar, this Court cannot consider Petitioner's evidence of the substance of the witnesses' testimony even on de novo review.

Fourth, and in the alternative, Respondent argues that, even if this Court does consider the new evidence under *Strickland* de novo, without the AEDPA "double deference" overlay, Petitioner has not shown entitlement to federal habeas corpus relief.

**A. *First Construction of Clam: Discussion of Appellate Court Decision on Initial Post-Conviction Review: No Supporting Facts***

The Idaho Court of Appeals used the proper standard of law, *Strickland v. Washington*. State's Lodging G-14 at 8. Petitioner was required to show "that the attorney's performance was deficient" under an "objective standard of reasonableness," and demonstrate he "was prejudiced by the deficiency" by showing "a reasonable

probability that, but for the attorney's deficient performance, the outcome of the trial would have been different." *Id.* The Idaho Court of Appeals specifically noted that "it is not enough to allege that a witness would have testified to certain events or would have rebutted certain statements made at trial without providing non-hearsay evidence of the substance of the witness's testimony." *Id.* This statement is a reasonable interpretation of *Strickland. See, e.g., U.S. v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (to show deficient performance based on failure to call a witness, "evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit"; a defendant "cannot simply state that the testimony would have been favorable," as such "self-serving speculation will not sustain an ineffective assistance claim").

The state court record is clear that Petitioner did not identify any witnesses or the substance of their testimony in the post-conviction matter in state district court. This Court agrees that, on the proper record that was before the Idaho state courts, Petitioner did not carry his burden to show *Strickland* prejudice, because Petitioner failed to provide the witnesses' testimony, show it would have been favorable, and demonstrate the substance of testimony, ability, and willingness to testify via a sworn statement. This is a reasonable application of *Strickland* to the facts in the proper state court record; therefore, the claim fails under § 2254(d)(2).

**MEMORANDUM DECISION AND ORDER - 14**

**B.** *Second Construction of Clam: Discussion of Appellate Court Decision on Initial Post-Conviction Review: Refusal to Accept Facts Presented for the First Time on Appeal*

As noted above, Petitioner attempted to provide facts about four of his witnesses' purported testimony in his appellate briefing, without having done so in the state district court, but the Idaho Court of Appeals rejected this presentation as improper. *See* State' Lodging G-14 at 5 n.3. There are two ways to construe rejection of the evidence for federal habeas purposes.

One is to construe Petitioner's argument under § 2254(d)(2), that failure to consider the evidence "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." To challenge factual findings as unreasonable under § 2254(d)(2), a petitioner may challenge the fact-finding process itself on the ground that it was deficient in some material way." *Hibbler v. Benedetti*, 693 F.3d 1140, 1146 (9th Cir. 2012) (internal citations omitted). Here, the question is whether it was unreasonable for the Court of Appeals to refuse to consider the news facts presented on appeal.

The Idaho Court of Appeals treated Petitioner's facts in accordance with its precedent. In *McKinney v. State*, 992 P.2d 144, 149 (Idaho 1999), the Court explained:

> To justify a post-conviction evidentiary hearing, the petitioner must make a factual showing based on admissible evidence. The application must be supported by written statements from competent witnesses or other verifiable information. *Paradis v. State*, 110 Idaho 534, 536, 716 P.2d 1306, 1308 (1986) (quoting *Drapeau v. State*, 103 Idaho 612,

**MEMORANDUM DECISION AND ORDER - 15**

617, 651 P.2d 546, 551 (Ct.App.1982)). Unsubstantiated and
conclusory allegations are insufficient to entitle a petitioner to
an evidentiary hearing. *King v. State*, 114 Idaho 442, 446, 757
P.2d 705, 709 (Ct.App.1988).

*Id*. at 149.

In Petitioner's case, he made no factual showing supporting the merits of the

witnesses in the state district court. Therefore, the state district court did not unreasonably

deny him an evidentiary hearing, nor did the state appellate court unreasonably refuse to

consider the new evidence for the first time on appeal.

The second way for this Court to consider the new facts is to deem the claim

procedurally defaulted, and determine whether the procedural default is based on an

adequate and independent state ground. Here, the state law ground for rejecting this

evidence is adequate because it is longstanding, which gives litigants notice of its

existence. *See Person v. State*, 210 P.3d 561 (Idaho Ct. App. 2009) (recognizing "the

general rule that issues not raised below may not be considered for the first time on

appeal," citing *Small v. State*, 971 P.2d 1151, 1155 (Idaho Ct. App. 1998)).

This state rule is independent of federal law because the role of the state appellate

court is to review a lower court's decision for mistakes. Clearly, if a petitioner did not

present evidence to the lower court, there is no lower court decision on that subject to

review for mistakes. This basic principle has nothing to do with federal law, but is a

function of the purpose and design of the state appellate review process. The claim, based

on new facts not presented to the state district court and rejected as procedurally improper

**MEMORANDUM DECISION AND ORDER - 16**

by the state appellate court, is procedurally defaulted. No legal cause exists. *See Shinn v. Ramirez*, 596 U.S. 366, 383-87 (2022) (a post-conviction attorney's choices of what to present on appeal are attributable to the petitioner). No Prejudice has been shown. (*See* de novo review analysis below.) Nor does the record support actual innocence. (*See* discussion of victim's testimony and purported missing witnesses' testimony below.) Therefore, the Court cannot entertain the claim expanded to four witnesses.

Based on the foregoing, this Court concludes that the Idaho Court of Appeals did not make an unreasonable determination of the facts in light of the evidence presented in the state court proceeding by excluding evidence in the appellate court that was never presented to the state district court. 28 U.S.C. § 2254(d)(2). Nor did that court apply state law procedural grounds that were not adequate or independent; existing case law put Petitioner on notice of state procedures.

Petitioner argues that, if state district court would not have denied his motion to amend the successive post-conviction petition, he would have been able to properly present his claim to the state appellate courts. However, Petitioner's default occurred *before* the successive post-conviction action began. It occurred during the initial post-conviction action, as explained directly above. Petitioner was required to bring facts supporting his witness claim in the first post-conviction petition. He did not do so. Therefore, the state district court's denial of the motion to amend the successive post-conviction petition has no causal link to the default of Petitioner's claim.

**MEMORANDUM DECISION AND ORDER - 17**

### 3.  Third Construction: Discussion of Whether Petitioner Can Proffer Evidence in Federal Court

The next question before the Court is whether new evidence Petitioner presented for the first time on state appellate review (as to four witnesses), or that he desires to present for the first time here (as to eleven witnesses), may be considered to support his claim that his trial counsel failed to call Petitioner's witnesses at trial.

Generally, the merits of the claims in a federal habeas corpus petition are decided on the record that was before the state court. *Pinholster*, 563 U.S. at 180; 28 U.S.C. §2254(e)(2). There are rare circumstances in which the state court record may be supplemented by new factual development in federal court, such as when a state court did not decide a claim on the merits *and* the claim is properly before the federal court, or when the state court factual determination was unreasonable. Neither circumstance is present here.

If a petitioner desires to bring new evidence on federal habeas review that has not been presented to the state courts, *and* he failed to develop the factual basis of the claims in state court because of "lack of diligence or some greater fault, attributable to" him or his counsel, then he must meet the requirements of § 2254(e)(2). *Williams v. Taylor*, 529 U.S. 420, 432 (2000).

Respondent cites the following reasoning by the United States Court of Appeals for the Ninth Circuit that demonstrates application of these principles:

MEMORANDUM DECISION AND ORDER - 18

Lee was not diligent in developing the factual basis of his claim before the state court. Because Lee "failed to develop the factual basis of [his] claim in State court proceedings," he would be entitled to an evidentiary hearing only if he qualified for section 2254(e)(2)'s exceptions. 28 U.S.C. § 2254(e)(2). He does not. His claim does not rely on "a new rule of constitutional law." *Id*. § 2254(e)(2)(A)(i). Nor does it rely on "a factual predicate that could not have been previously discovered through the exercise of due diligence." Id. § 2254(e)(2)(A)(ii). To the contrary, the evidence that Lee proffered to the district court is evidence that could have been discovered by his state counsel or his state investigator.

*Lee v. Thornell*, No. 10-99022, 2024 WL 3515568, at *10 (9th Cir. July 24, 2024).

Petitioner has not met the requirements of § 2254(e)(2). Because Petitioner provided supporting facts to the Idaho courts improperly, this Court cannot consider them. This Court agrees with the reasoning in *Row v. Miller*, 2023 WL 2744409 (D. Idaho March 31, 2023) (unpubl.), that "neither the AEDPA's text nor the United States Supreme Court's interpretation of AEDPA supports" a "broad definition" of the "state court record," such as one including "procedurally improper phases of state appeals and post-conviction matters." *Id*. at *6.

Respondent further contends, and the Court agrees, that the purpose of *Ramirez* would be eviscerated if petitioners were given the green light in federal court even though they failed to present evidence to state district courts in the initial postconviction proceedings and then presented it improperly for the first time on appeal or in an improper successive petition. *See Madrid v. Hutchings*, 2022 WL 4110368, *21 (D. Nev. 2022) (unpubl.); *Sosnowicz v. Shinn*, 2022 WL 2702457, at *3 (D. Ariz. 2022) (unpubl.)

**MEMORANDUM DECISION AND ORDER - 19**

(rejecting the theory that diligence in a successive post-conviction proceeding can overcome lack of diligence in a first post-conviction proceeding).

This Court previously indicated that § 2254(e)(2) would bar the introduction of evidence that was omitted in state district court and improperly presented for the first time on appeal. Dkt. 30 at 18. The same is true for evidence that was *improperly* presented to the state district court in a successive post-conviction application without adequate legal excuse. As a result, Petitioner must rely on only the "permissible" state court record to prove that trial counsel was ineffective for failing to investigate certain witnesses. This proves fatal to his claim, because the witness names and substance of testimony do not appear in the state court record except in an impermissible manner—presented for the first time on appeal and for the second time in a successive petition.

Because Petitioner failed to make a proper record in state district court, this Court may not consider the witness evidence on federal habeas corpus review. Accordingly, the Court agrees with the Idaho Court of Appeals that Petitioner cannot prevail under *Strickland*. Nor can Petitioner meet prong 1 of the *Martinez* test (showing adequate legal cause) under *Ramirez*, because he asserts that the failure to raise the claim in state court was the fault of his attorneys, which is attributed to Petitioner himself. *See* 596 U.S. at 383-91. This Court concludes that the Idaho Court of Appeals reasonably applied *Strickland* in denying Claim 2(a) on the permissible state court record.

**MEMORANDUM DECISION AND ORDER - 20**

### 4.  Fourth Construction: Discussion of *De Novo* Review of Witnesses Claim

Alternatively, even if the Court considers the substance of these witnesses' testimony, it does not amount to sufficient evidence to overcome the victim's testimony and other supporting evidence. An explanation of the relationships of some of these witnesses is helpful to understanding their purported testimony. Petitioner and Herminia Castro lived together in the same bedroom in Petitioner's house; Petitioner provided the majority of the financial support for Herminia and her children. Petitioner argues that some of the missing witnesses would have testified that Petitioner and Herminia were not dating, but witnesses at trial testified hat they were dating for years and that they shared a bedroom, *e.g.*, State's Lodging C-1 at 273, 275, 310, 470. Petitioner himself asserted they were sharing a bedroom. *See* State's Lodging H-1 at 18. A jury would not be easily convinced that they were not dating if they shared a bed and bedroom. In addition, in his post-conviction action, Petitioner asserted, "It is highly probable that Ruben's testimony would have been a "rebuttal to the alleged Victim's testimony as to not hearing or seeing any sexual activity occurring in the household, (Tr. T., P.336—P.337), while living in the same room were [sic] her mother and the Petitioner engaged in said activity." State's Lodging H-1 at 18.

Herminia had three children not fathered by Petitioner: Nancy Vera, in her teens; Ruben Vera, Jr.; and the victim, C.V. In addition, Nancy's fiancé moved in with Petitioner and Herminia; Nancy was pregnant with Soria's child, and Nancy and Soria

eventually married and had two other children together. *See* State's Lodging C-1 at 262-279.

## A. *Luis Soria*

Petitioner asserts that Soria would have been a hostile witness but should have been called anyway. Dkt. 31 at 10. Petitioner alleges that Soria once commented to Petitioner that Soria had sex with his mother-in-law, Herminia. *Id*. There is no sworn statement in the record showing that Soria was willing to come forward to make this admission at Petitioner's trial. Even assuming Soria would have testified that he had a sexual encounter with Herminia, Petitioner does not explain how this testimony has anything to do with his theory of the case or Petitioner's denial of his alleged sexual abuse of Herminia's daughter.

## B. *Ruben Vera, Sr.*

Ruben Vera, Sr., is Herminia's ex-husband and the father of Ruben Vera, Jr. Petitioner asserts Vera, Sr., would have testified that he "was also chased out of his home with threats by Herminia that if he did not leave, she was going to have him accused of kissing, touching, and molesting her daughter." Dkt. 31 at 10.

Petitioner has never presented an affidavit from Vera, Sr., demonstrating that he would have testified to these facts at trial, if called. It is also questionable whether this hearsay testimony would have been admissible for several reasons. *See* Idaho Rule of Evidence 403 (courts "may exclude relevant evidence" where probative value is

**MEMORANDUM DECISION AND ORDER - 22**

substantially outweighed by danger of unfair prejudice and juror confusion, among other things); Idaho Rule of Evidence 802 (hearsay generally not admissible unless an exception to this rule is shown).

Vera, Sr., allegedly would also have testified about Herminia's "manipulating and threatening behavior" during Vera, Sr., and Herminia's marriage, and "other issues and troubles that occurred during [the] marriage." State's Lodging H-1 at 17. This evidence has little relevance to the criminal charges against Petitioner.

### C. *Ruben Vera, Jr.*

Petitioner asserts that Ruben Vera, Jr., a minor, would have testified that he shared a room with the victim and their mother Herminia during the relevant time period, and that he heard his mother make "several comments of a sexual nature towards [Petitioner] while the kids were present in the room they all shared." *Id*. at 18. Petitioner argues that "[t]hose same comments seem to be parroted word for word throughout the testimony of … the alleged victim in the instant case." *Id*. at 18. Petitioner's assertion that Vera, Jr., would have testified that his sister's description of sexual acts were exactly the same as the words his mother used is implausible, given the many different sexual acts and associated senses the victim described.

For example, the trial court stated at sentencing:

> [C.V.] testified in two trials, once when she was very
> young and, second, when she was approximately 6 years
> older. In both cases, the jury, based on her testimony and
> other evidence presented, found you guilty of these offenses. I

**MEMORANDUM DECISION AND ORDER - 23**

> know that you take the position that [C.V.] has fabricated this
> story. In my view, from listening to her testimony, the
> evidence presented, there is no evidence of fabrication, nor is
> there any motive to fabricate on her part.

State's Lodging C-3 at 600.

The prosecutor summarized a portion of the victim's testimony:

> She knows what sounds the defendant makes when
> he's being touched by her. She knows that what comes out of
> the defendant's penis tastes like raw food or something dead,
> and she knows she doesn't want to swallow it and that she
> wants to brush her teeth after she spits it out. Did that come
> from a movie, from talking to her sister? There's no doubt
> that [C.V.] knows about sex because of what this defendant
> did to her when she was just a vegetable and had no say in it
> at all.

*Id*. at 533-34.

The victim's testimony reflects the same. *Id*. at 356-57 (When the victim's mouth

was on Petitioner's penis, "[h]e would be laying on the bed, looking at the ceiling, and

he'd be making sounds like if he couldn't breathe" or was "tired.").

Nothing in the record shows that the victim's brother would have been willing to

testify in open court against his sister and mother.

### D. *Telesforo and Alfoncia*

Petitioner alleges trial counsel should have called "Telesforo and Alfoncia," who

would have testified that, two years earlier when the victim was eight years old, she

slipped while doing the splits, injured herself, and bled from her vagina. Dkt. 31 at 7.

However, a vaginal injury when she was eight years old—two years before the sexual

**MEMORANDUM DECISION AND ORDER - 24**

activities began—is not relevant absent some type of medical opinion connecting the two. *See* State's Lodging C-3 at 423. Nothing in the record shows these witnesses would have been willing and able to testify of these particular facts.

### E.  *Francisco Avila*

Petitioner alleges that Francisco Avila "knows the entire history of this relationship and case, and was willing to testify to all he knew." Dkt. 31 at 10. This synopsis is too vague to be helpful. Further, nothing in the record shows this witness would have been willing and able to testify at trial.

### F.  *Barbar or Barbra Gartner*

Petitioner identifies Barbar [sic] or Barbra Gartner as an important witness. Dkt. 31 at 10. There is no indication of the subject matter of this witness's testimony or anything in the record showing this witness would have been willing and able to testify at trial. *See id*.

### G.  *Jose Rivera*

Jose Rivera is the brother of Herminia. Rivera bought Petitioner's mobile home in Buhl in July of 2008. Dkt. 31 at 10. There is no indication of the subject matter of this witness's testimony or anything in the record showing this witness would have been willing to testify against his sister and niece at trial. *See id*.

**MEMORANDUM DECISION AND ORDER - 25**

### H. *Patricia Beltran*

Patricia Beltran is the "sister of Maria Castro." *Id*. Patricia purportedly "knew a lot of the history of Herminia and Nancy Vera and their characters." *Id*.  This is too vague to be helpful. Petitioner states that Patricia was willing to testify at trial, but no affidavit to that effect is contained in the record.

### I. *Jose Luis*

Jose Luis is the victim's uncle. Dkt. 31 at 10. Petitioner asserts that the victim "had a lot of trust in" Luis; the victim "told him that [Herminia] did not want to do anything or work," and told him that Petitioner "[was] paying for everything in the house and nobody else [was] doing anything." *Id*. Petitioner fails to show that, had Luis's hearsay testimony about Herminia's character or Petitioner's work ethic been presented to the jury, there was a "reasonable probability" the testimony would have changed the verdict. The subject of this testimony would have done nothing to rebut the victim's detailed testimony of the various sexual acts perpetrated by Petitioner, as described above. Petitioner has not produced a sworn affidavit or anything showing the victim's uncle, a trusted relative of the victim, was willing to testify against his sister and the victim (his niece) at Petitioner's trial.

### J. *Jose Diaz*

Jose Diaz is Petitioner's brother-in-law, who lived in Petitioner's house for a few months and had some sort of insider knowledge that "Herminia waited for the right day

**MEMORANDUM DECISION AND ORDER - 26**

to run them out of Calvillo's house." Dkt. 31 at 11. This purported testimony is vague and likely would have relied upon inadmissible hearsay. There is no affidavit from Diaz in the record showing he was willing and able to testify as Petitioner's witness at trial.

### K. *Conspiracy among Nancy, Soria, Herminia, and the victim*

Petitioner also alleges that he, alone, was supporting the household, and Soria would have testified that Petitioner "had told him and Nancy (Herminia's 17-year-old pregnant daughter) to move out of his house." *Id*. Petitioner's theory at trial was that the rest of the household wanted him to move out of his own house so that they could keep it for themselves, and this desire was allegedly the motive for a ten-year-old girl to make up stories about sexual encounters with Petitioner, including oral and attempted anal sex. However, as noted above, the jury found the detailed testimony of touch, smells, taste, and sounds were credible observations, rather than fabrications.

The record contrarily reflects that Nancy's testimony on redirect was that Soria and Petitioner had a positive relationship, and that Petitioner told Nancy she could stay in his house "as long as [she] needed" until she graduated. State's Lodging C-3 at 324-326. The minor victim similarly testified that she was unaware of any threats Petitioner made "to throw Nancy and [Soria] out." *Id*. at 414.

Petitioner's theory that Nancy, Soria, and Herminia conspired together to "plant ideas" in the victim's head does not explain the victim's ability to describe the sensuous details of various sexual acts at the age of ten. All of the purported additional witness

**MEMORANDUM DECISION AND ORDER - 27**

testimony, considered separately or together, does not show a reasonable probability that, had these witnesses testified, the jury verdict would have been different. *See Strickland*, 466 U.S. at 694.

### L. *Deficient Performance Prong of Strickland*

As to deficient performance, Petitioner has not overcome the presumption that trial counsel made a strategic decision not to call these witnesses. Trial counsel called eight witnesses to testify, many of whom testified as to Calvillo's purported good character. *See, e.g.*, State's lodging C-1 at 457-64. In particular, many testified that Petitioner spent time with children or their daughters, and no sexual allegations against him were ever raised. The witnesses testified that they would not hesitate to have their children in the company of Petitioner because he had shown himself to be a trustworthy individual over a lengthy period of time. *See* State's Lodging C-1 at 427-471.

Others, such as Maria Calvillo and Eduardo Calvillo, testified in support of Petitioner's rising-household-tension theory of the case. State's Lodging C-1 at 432-433, 439-442. Petitioner has not shown that calling cumulative witnesses about this theory of the case would have been helpful to countering the direct evidence of sexual activity the victim and other witnesses presented at trial.

### 5. Summary and Conclusion

Petitioner's claims, based on the evidence properly presented to the state courts, fail to meet the habeas corpus standard. Petitioner's new evidence about his witnesses is

**MEMORANDUM DECISION AND ORDER - 28**

subject to the procedural bars set forth above. Even if this Court considers Petitioner's

new evidence here, he has failed to show the lack of evidence prejudiced Petitioner's case

or the reason these witnesses were not called was deficient performance, rather than a

strategy call on the part of defense counsel, including that much of the evidence relied on

hearsay or was not relevant to the elements of the crimes. Under de novo review, Claim

2(a) fails to warrant federal habeas corpus relief.

### PETITIONER'S MOTION FOR REMAND
### AND FOR APPOINTMENT OF COUNSEL

Petitioner again requests counsel and asks the Court to remand this case to the

state district court so that he can correct the procedural errors and present his claims

there. Dkt. 46. This Court has no jurisdiction to invite or order the state district court to

review Petitioner's claims again. If Petitioner desires to file another successive post-

conviction action in state court, that is his own choice.

The Court concludes that appointment of counsel is not warranted. The state court

record is clear. The nature of the victim's testimony would not be impeached by the types

of evidence Petitioner purports to bring forward. There are no sworn statements in the

record showing that the witnesses were willing to testify or showing the true substance of

their testimony. Appointment of counsel would not do anything more for Petitioner's

claim within the boundaries of the strict procedural rules of federal habeas corpus law or

aid the Court's decisionmaking.

**MEMORANDUM DECISION AND ORDER - 29**

## ORDER

**IT IS ORDERED:**

1. Petitioner's Second Motion for Extension of Time to File Reply (Dkt. 44) is GRANTED. The reply filed at Docket 45 is timely.

2. Petitioner's Second Motion for Appointment of Counsel (Dkt. 46) is DENIED.

3. The Second Amended Petition (Dkt. 31), and this entire case, are DISMISSED with prejudice.

4. The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the United States Court of Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: February 6, 2025

Honorable Candy W. Dale
United States Magistrate Judge

MEMORANDUM DECISION AND ORDER - 30